**IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| In re KEVIN JAMES MORRELL, | ) | Case No. 24-44713 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| KEVIN O'NEIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adversary Case No. 25-04009 |
| | ) | |
| KEVIN JAMES MORRELL, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF KEVIN O'NEIL'S WRITTEN CLOSING ARGUMENT**

Plaintiff Kevin O'Neil respectfully submits this Written Closing Argument at the Court's invitation and requests that the Court enter judgment determining that the debt owed by Defendant Kevin James Morrell is nondischargeable under 11 U.S.C. § 523(a)(2)(B).

This case is not about the fact that the GS Vista LLC transaction failed. Business failure does not equal material falsity, and O'Neil does not ask the Court to equate the two. The issue is narrower and more important: before O'Neil loaned $2.5 million and accepted Morrell's personal guaranty, Morrell delivered a personal financial statement that portrayed him as a man with approximately $42.5 million in net worth and substantial assets available to support that guaranty. O'Neil relied on that written presentation in deciding to proceed. After the transaction failed, Morrell took the opposite position and denied that significant assets reflected on the statement were his individual assets or assets reachable to satisfy his guaranty. That is precisely the kind of materially false written financial statement that 11 U.S.C. § 523(a)(2)(B) makes nondischargeable.

1

## I.   The Evidence Proved a Written Statement Respecting Morrell's Financial Condition

There is no genuine dispute that Morrell provided O'Neil with a personal financial statement in connection with the GS Vista LLC transaction. The statement reflected total net worth of $42,519,828. It listed major categories of assets, including a primary residence, a secondary residence, a 22-acre tract, receivables, business interests, and personal property.

The statement was not incidental. It was provided alongside Morrell's personal guaranty and was part of the inducement package O'Neil considered before loaning $2.5 million. O'Neil testified clearly that the guaranty mattered because it gave him a direct recourse against Morrell if the project failed, and that the financial statement mattered because it showed "that he had liquidity, income, and stability to be able to repay a $2.5 million dollar loan." (Tr. 17:14-15).

Under 11 U.S.C. § 523(a)(2)(B), that constitutes a statement respecting the debtor's financial condition. See *First Nat'l Bank of Olathe, Kan. v. Pontow*, 111 F.3d 604 (8th Cir. 1997).

## II.   The Statement Was Materially False

A statement is materially false when it presents a substantially untruthful picture of the debtor's financial condition. That is what happened here.

Plaintiff testified that he understood Morrell's written statement to mean that the listed assets were Morrell's assets, or at least assets available to support his guaranty. The statement conveyed that Morrell had substantial net worth and ample repayment capacity. But Morrell's testimony at trial and at the § 341 meeting depicted a markedly different picture. Morrell admitted that significant assets listed on the statement were actually his wife's or otherwise were not his individually collectible assets.

The 22-acre tract and the primary residence are particularly telling. Morrell acknowledged that those assets were not held in the way the financial statement implied. The same problem

existed with other major categories of property. The result was not a minor accounting error. It was a materially misleading portrayal of the financial strength supporting Morrell's guaranty.

O'Neil was justified in his reliance on the balance sheet Morrell chose to present. Morrell cannot supply a written statement showing tens of millions in net worth to induce a transaction, then later disavow ownership of the very assets that made that statement meaningful.

### III.     Plaintiff Actually Relied on the Statement, and That Reliance Was Reasonable

Plaintiff testified repeatedly and consistently that the financial statement was material to his decision and that he relied on it in deciding to loan the funds. He further testified that had Morrell disclosed that the principal assets were not truly his, or were not available to satisfy the guaranty, he would not have entered the transaction. That testimony was credible and was corroborated by the structure of the deal. O'Neil was not relying on a handshake or an informal promise. He reviewed an operating agreement, obtained a personal guaranty, and reviewed written financial statements before wiring $2.5 million. That is exactly the type of reliance 11 U.S.C. § 523(a)(2)(B) is meant to protect.

Reliance was also reasonable under the totality of the circumstances. The Eighth Circuit applies a practical, common-sense standard, considering the whole transaction and whether there were warning signs that should have prompted further inquiry. *See Sinclair Oil Corp. v. Jones* (*In re Jones*), 31 F.3d 659 (8th Cir. 1994); *First Nat'l Bank of Olathe, Kan. v. Pontow*, 111 F.3d 604 (8th Cir. 1997). There were no such warning signs here. Morrell presented a formal written financial statement in support of a personal guaranty. O'Neil was not required to assume the statement was false or to reconstruct ownership of every listed asset before relying on it.

Morrell's argument that O'Neil is a sophisticated investor does not defeat reasonable reliance. Sophisticated creditors are still entitled to rely on materially false written financial

statements. Sophistication may affect what diligence is reasonable, but it does not give a debtor permission to publish a misleading balance sheet.

### IV.    Morrell Made or Published the Statement with Intent to Deceive

"Intent to deceive may be inferred from the surrounding circumstances because direct proof of a debtor's state of mind is rarely available; the court may therefore consider the debtor's testimony, actions, and silence in determining intent." *Merchants Nat'l Bank of Winona v. Moen* (*In re Moen*), 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999; *Caspers v. Van Horne* (*In re Van Horne*), 823 F.2d 1285, 1287-88 (8th Cir. 1987).

The circumstances here support that inference. Morrell knew why the financial statement was being requested. He knew it was being used to support a $2.5 million transaction backed by his personal guaranty. He also knew that the assets listed on the statement were being presented as part of his financial strength when significant portions were not in fact available to satisfy the guaranty as represented.

The most compelling evidence of intent is the shift in Morrell's position over time. When the transaction was being offered, the written statement portrayed him as a person of substantial means. When collection became real, he claimed that many of the listed assets were really his wife's or otherwise beyond the reach of O'Neil. That kind of *post hoc* retreat from the representations that induced the transaction supports an inference of intent to deceive, or at minimum reckless indifference to the truth. See *First Nat'l Bank of Olathe, Kan. v. Pontow*, 111 F.3d 604 (8th Cir. 1997).

### V.    The Amount of the Nondischargeable Debt Is Established

O'Neil also proved the amount of the debt. The trial evidence established that O'Neil loaned $2.5 million, that the parties agreed to a 12% noncompounded preferred return over the

applicable term, that no timely extension occurred, and that O'Neil made written demand after default. O'Neil's damages, as reflected in the evidence and exhibits, include return of principal, unpaid preferred return, and prejudgment interest, in the total amount proven at trial.

## Conclusion

O'Neil did not lose money because the business merely failed.  He lost money because Morrell induced the transaction with a materially false written personal financial statement that overstated the assets standing behind Morrell's personal guaranty. O'Neil actually and reasonably relied on that statement. The debt therefore falls within the exception to discharge set forth in 11 U.S.C. § 523(a)(2)(B).

For these reasons, Plaintiff Kevin O'Neil respectfully requests that the Court enter judgment in his favor and determine that Defendant Kevin James Morrell's debt to Plaintiff Kevin O'Neil is nondischargeable.

Respectfully submitted,

*/s/ David R. Keesling*
David R. Keesling, OK Bar No. 17881*
Destyn D. Stanton, OK Bar No. 31718*
SOLOMON | ARIEH
401 S. Boston Avenue, Suite 2300
Tulsa, OK 74103
Telephone: (918) 631-7770
dkeesling@solomon-arieh.com
dstanton@solomon-arieh.com

and

Joe D. Jacobson #33715
JACOBSON PRESS P.C.
222 South Central Ave., Suite 550
Clayton, Missouri 63105
Direct: (314) 899-9790
Fax: (314) 899-9790
Office General: (314) 899-9789
Jacobson@ArchCityLawyers.com

*Attorneys for Plaintiff Kevin O'Neil*

*Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was filed electronically on the 14th day of April, 2026, with the United States Bankruptcy Court for the Eastern District of Missouri, and was served electronically upon all parties who have requested or are entitled to notice via the Court's CM/ECF System.

*/s/ David R. Keesling*
David R. Keesling

6