**IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| In re KEVIN JAMES MORRELL, | ) | Case No. 24-44713 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| KEVIN O'NEIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adversary Case No. 25-04009 |
| | ) | |
| KEVIN JAMES MORRELL, | ) | |
| | ) | |
| Defendant. | ) | |

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff Kevin O'Neil respectfully submits the following Proposed Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

**A. Credibility Determinations**

1.      The Court finds that Defendant Kevin Morrell's testimony was not credible in material respects. The Court bases this determination on multiple inconsistencies between Defendant's trial testimony and his prior sworn testimony, including testimony at the § 341 meeting of creditors, as well as inconsistencies between his testimony and the documentary evidence.

2.      The Court finds that Defendant's explanations regarding ownership of assets were evasive and shifted depending on the context in which the statements were made.

3.      The Court finds that Defendant's testimony reflected a pattern of selective disclosure and omission, particularly with respect to whether assets listed on the personal financial

1

statement were owned by Defendant or by his wife or her trust.

4.      The Court finds that the documentary evidence is more reliable than Defendant's testimony where the two conflict.

5.      The Court finds that Defendant's inconsistent positions were not the result of confusion or mistake but rather reflected a deliberate effort to present different versions of his financial condition at different times.

### SUBSTANTIVE FINDINGS OF FACT

1.      Plaintiff Kevin O'Neil is an experienced investor with decades of experience in commercial real estate and investment transactions, with a portfolio exceeding one billion dollars. (Trial Tr. 7:1–4; 19:10–20:21; 30:18–31:10).

2.      Defendant Kevin Morrell sought to induce Plaintiff to lend $2.5 million to GS Vista LLC. (Trial Tr. 7:5–17; 9:4–11; 67:8–11; 85:18–86:3; 211:21–212:2). Although structured as an investment in Class A limited liability company membership, the substance of the transaction, with its promise of repayment of the invested amount on a day certain, the payment of "preferred distributions" at a fixed rate of return on specified dates, and the lack of any sharing in the profits of the enterprise, make it clear that the purported investment was for all intent and purposes an extension of credit.

3.      As part of that inducement, Defendant provided Plaintiff with a written personal financial statement reflecting a net worth of $42,519,828. (Ex. 2; Trial Tr. 7:10–17; 15:1–16:9; 89:1–16; 95:1–3; 96:21–25; 124:19–24; 126:6–10; 221:12–222:7).

4.      The personal financial statement represented that Defendant owned substantial assets, including:

        a.      Real estate valued at approximately $29,149,000 (Ex. 2; Trial Tr. 16:16–19; 41:17–20; 45:8–13; 95:1–6);

2

b.      A primary residence valued at approximately $6.5 million (Ex. 2; Trial Tr. 16:10–24; 45:8–16; 95:1–8; 101:10–102:6; 173:24–174:9; 175:5–8);

c.      Significant receivables and business interests (Ex. 2; Trial Tr. 16:10–22; 41:1–16); and

d.      Personal property valued at approximately $700,000 (Ex. 2; Trial Tr. 17:4–5; 95:1–12; 167:23–168:9).

5.      Defendant executed a personal guaranty in favor of Plaintiff in connection with the transaction. (Ex. 1; Trial Tr. 13:18–14:25; 17:22–18:9; 73:21–24). Again, this personal guaranty is more consistent with an extension of credit—a loan—rather than an investment.

6.      Plaintiff understood the financial statement to represent assets available to support Defendant's guaranty and repayment obligations. (Trial Tr. 13:24–14:7; 15:1–15:21; 17:9–18:5; 19:12–22; 96:1–7).

7.      Plaintiff testified that the financial statement was material to his decision and that he relied upon it. (Trial Tr. 17:9–18:9; 19:2–11; 27:18–28:20; 32:16–19; 95:16–96:11).

8.      Plaintiff further testified that Defendant's financial condition demonstrated sufficient liquidity and stability to repay the $2.5 million obligation. (Trial Tr. 17:9–18:5; 27:18–28:20; 95:16–96:11).

9.      Plaintiff would not have made the investment in, or extended credit to, GS Vista LLC had he known that Defendant did not own or would in the future claim not to have owned, the assets reflected in his personal financial statement. (Trial Tr. 18:6–15; 19:2–22; 26:4–8; 79:2–10).

10.     Plaintiff's reliance on the financial statement caused him to part with $2.5 million. (Trial Tr. 17:9–18:9; 19:2–11; 27:18–28:20; 32:16–19; 95:16–96:11).

11.     Defendant later asserted factual positions under oath that contradicted the representations in his personal financial statement, asserting that great majority of the non-Green

3

Street assets shown on the statement were not owned by Defendant but by his wife or her trust. (Trial Tr. 19:12–16; 25:15–26:8; 46:10–48:5; 72:14–73:10; 79:2–6; 89:7–21; 96:12–97:16; 126:6–128:22; 166:10–167:9; 176:12–19).

12.     Defendant did not disclose to Plaintiff before he transferred $2.5 million to GS Vista LLC that the non-Green Street assets shown on his personal financial statement were allegedly owned by his wife or her trust. (Ex. 1; Ex. 2; Trial Tr. 79:2–10; 96:12–97:16; 99:23–100:5; 102:17–103:19).

13.     Defendant's testimony at trial was inconsistent with his testimony at the § 341 meeting of creditors. (Ex. 8; Trial Tr. 98:16–108:22; 128:2–22).

14.     The Court finds that Defendant's representations about asset ownership were inconsistent across different proceedings and changed depending on the circumstances and whatever was most convenient for the Defendant at the moment.

15.     The documentary evidence presented at trial generally did not support Defendant's claimed ownership positions.

16.     The Court finds that Defendant exercised ownership control over assets he later claimed, including at trial, not to own, including through trust relationships and financial decision-making authority.

17.     The Court finds that Defendant's statements about the ownership of assets were statements of convenience, depending on when he needed to make them.

18.     The Court finds that Defendant's shifting positions were part of a strategy to avoid his financial obligations, including his repayment obligation to Plaintiff set out in his personal guaranty to Plaintiff.

19.     The Court finds that Defendant's personal financial statement presented a

materially misleading picture of Defendant's financial condition.

20. Defendant failed to repay Plaintiff under the terms of his guaranty.

## CONCLUSIONS OF LAW

**A.     Primary Liability Under 11 U.S.C. § 523(a)(2)(B)**

1. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

3. Under 11 U.S.C. § 523(a)(2)(B), a debt is nondischargeable if it is obtained by use of a statement in writing:

   a.     that is materially false;
   b.     respecting the debtor's financial condition;
   c.     on which the creditor reasonably relied; and
   d.     that the debtor made with intent to deceive.

4. Defendant provided a written personal financial statement to Plaintiff in connection with the GS Vista LLC transaction.

5. Defendant's personal financial statement was materially false because it misrepresented ownership of significant assets and presented a substantially untruthful picture of Defendant's financial condition. *See First Nat'l Bank v. Pontow*, 111 F.3d 604, 609 (8th Cir. 1997).

6. Plaintiff actually relied on the financial statement in deciding to invest $2.5 million.

7. Plaintiff's reliance was reasonable under the totality of the circumstances, including industry practice and the absence of red flags. *See Sinclair Oil Corp. v. Jones (In re Jones)*, 31 F.3d 659, 662 (8th Cir. 1994) (quoting *Coston v. Bank of Malvern (In re Coston)*, 991 F.2d 257, 261 (5th Cir. 1993)).

8. Defendant made the financial statement with intent to deceive Defendant.

9. Intent to deceive is established by Defendant's pattern of inconsistent statements,

5

contradictory sworn testimony, and shifting explanations about asset ownership.

10.     Intent may be inferred from the totality of the circumstances, including Defendant's reckless disregard for the truth and inconsistent representations. *Merchants Nat'l Bank of Winona v. Moen* (*In re Moen*), 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999; *Caspers v. Van Horne* (*In re Van Horne*), 823 F.2d 1285, 1287-88 (8th Cir. 1987).

11.     Defendant's conduct—presenting assets as his own to induce a loan and later disclaiming those same assets—constitutes intentional misrepresentation.

12.     Plaintiff has established all elements of 11 U.S.C. § 523(a)(2)(B).

13.     Accordingly, Defendant's debt to Plaintiff is nondischargeable.

14.     The Court concludes that the totality of Defendant's conduct—including the cumulative effect of multiple inaccuracies, omissions, and inconsistencies in the written financial statement—rendered Defendant's statements to Plaintiff materially false.

15.     The Court further concludes that even if any individual misstatement were deemed immaterial in isolation, the aggregation of misrepresentations concerning asset ownership materially distorted Defendant's financial condition and was sufficient to induce Plaintiff's reliance.

16.     The Court further concludes that Defendant's pattern of inconsistent sworn testimony provides an independent basis for inferring intent to deceive, even apart from the contents of the written personal financial statement itself.

17.     To the extent any ambiguity exists regarding ownership of specific assets, the Court construes such ambiguity against Defendant, who was in the best position to accurately disclose his financial condition at the time of the transaction.

18.     The Court concludes that Defendant's conduct demonstrates, at minimum, a

6

reckless disregard for the truth sufficient to satisfy the intent requirement under § 523(a)(2)(B).

*See Pontow*, 111 F.3d at 610; *Premier Bank v. Koester (In re Koester)*, 437 B.R. 363, 369 (Bankr.

E.D. Mo. 2010).

## CONCLUSION

The Court should enter judgment in favor of Plaintiff Kevin O'Neil and find that Defendant

Kevin Morrell's obligations to O'Neil are nondischargeable under 11 U.S.C. § 523(a)(2)(B).

Respectfully submitted,

/s/ David R. Keesling
David R. Keesling, OK Bar No. 17881*
Destyn D. Stanton, OK Bar No. 31718*
SOLOMON | ARIEH
401 S. Boston Avenue, Suite 2300
Tulsa, OK 74103
Telephone: (918) 631-7770
dkeesling@solomon-arieh.com
dstanton@solomon-arieh.com

and

Joe D. Jacobson #33715
JACOBSON PRESS P.C.
222 South Central Ave., Suite 550
Clayton, Missouri 63105
Direct: (314) 899-9790
Fax: (314) 899-9790
Office General: (314) 899-9789
Jacobson@ArchCityLawyers.com

*Attorneys for Plaintiff Kevin O'Neil*

*Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was filed electronically on the 14th day of April, 2026, with the United States Bankruptcy Court for the Eastern District of Missouri, and was served electronically upon all parties who have requested or are entitled to notice via the Court's CM/ECF System.

/s/ David R. Keesling
David R. Keesling

8