IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re KEVIN JAMES MORRELL, | ) | |
| | ) | Case No. 24-44713 |
| Debtor, | ) | |
| | ) | |
| | ) | |
| KEVIN O'NEIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Adv. No. 25-04009 |
| KEVIN JAMES MORRELL, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S SUPPLEMENTAL POST-TRIAL BRIEF

COMES NOW, Debtor and Defendant, Kevin James Morrell ("Morrell'), and for his Supplemental Post-Trial Brief, states to the Court as follows:

1.    This matter was tried before the Court on March 24, 2026, at which time Plaintiff requested, and the Court ordered the filing of supplemental briefs on or before April 14, 2026.

## BURDEN OF PROOF

2.    The creditor has the burden of proving all the elements of 11 USC Section 523 (a) 2 B. See *First National Bank of Olathe, Kan. V. Pontow,* 111 F. 3d 604.608 (8th. Cir. 1997).

## ELEMENTS OF 11 USC Section 523 (a) 2 B

3.    The elements of the action are:

The Debtor obtained money property services or credit by use of a statement in writing:

That is materially false.

Respecting the Debtor's or an insider's financial condition.

On which the Debtor reasonably relied; and

That the Debtor caused to be made or published with intent to deceive.

### MATERIALTY OF THE FALSEHOOD

4.      First, it is important to note that at no time during the course of the trial was it established that any of the information on the personal financial statement which is the subject of this adversary was false. Morrell testified that at the time covered by the financial statement (the "PFS") of December 30, 2020 (the "PFS Date") he did have a net worth of $42,519,828 and that he did have the $29,149,388 in net equity in the Green Street projects that the PFS correctly referenced. Morrell Direct Examination. He further testified that he had left nothing of his or his wife Jane Morrell's ("Jane") assets off of the PFS. Morrell Recross. At no point did the Plaintiff allege that Morrell had left assets off of the PFS. Morrell testified that this was the same PFS he used for all of his other projects and that none of his other investors or creditors had objected to the information on the PFS. Morrell Direct.

5.      The testimony elicited from O'Neil, Morell and Jane established that the J/I column established whether ownership of particular assets was owned individually or jointly and whether a trust was an owner. It was also established and agreed that the house, secondary residence and 22 acres had blanks in the J/I column. The PFS lists Jane Morrell as a Joint party and references Kevin's trust. O'Neil testified that he relied solely upon the Personal Guaranties of Morrell and Philip Hulse and their financial statements in making the investment in GS Vista, LLC, that he made no effort to secure the

guaranties of their wives and did nothing to verify ownership of any of their properties. O'Neil Cross.

6.      Materiality under 11 USC 523 (a) 2 B requires proof of substantial inaccuracy in the statement submitted. *In re Bundy,* 95 B.R. 1004, 1008 (Bankr. W.D. Mo. 1989). There is no substantial inaccuracy in the PFS, merely a few incomplete columns. Morrell's testimony that he sold the 22 acres listed at a value of $2,500,000 in the PFS a few years later for $3,500,000 is proof of the good faith of his valuations and the accuracy of the information he provided for the PFS. Morrell Direct.

7.      A financial statement is materially false if it paints a substantially untruthful picture of a financial condition by a misrepresentation of the type which would normally affect the decision to grant credit. *In re Bohr,* 271 B.R. 162, 167 (Bankr. W.D. Mo. 2001). In the instant case the testimony seems clear that Morrell listed all of his assets and had a net worth in the amount referenced in the PFS. Morrell made no misrepresentations on the PFS. Morrell Direct.

8.      Some degree of inaccuracy is expected in financial statements. *In re Bundy* at page 1008.  There were no inaccuracies in the PFS, only items any reasonable investor would have made further inquiries about.

**REASONABLE RELIANCE**

9.      This element of 11 USC Section 523 (a) 2 B is <u>intended to protect only prudent lenders</u> and to prevent unscrupulous lenders from inducing borrowers to submit false financial statements for the purpose of later using them to object to discharge. *In re Ophaug.* 827 F. 2d 340, 343 (8th Cir. 1987). Under no circumstances was O'Neil a prudent lender/investors. Despite his admission that he had a billion-dollar real estate portfolio and was a sophisticated real estate investor (O'Neil Cross) he failed to take

incredibly basic measures to examine Morrell's assets, ownership of assets and debts, even though he had been put on notice by the PFS that such inquiries were necessary.

10.     A creditor must show actual reliance and the reasonableness of such reliance. *Bundy* at page 1008. Among other things, the Court may consider whether there are any **red flags** that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate and whether even minimal investigation would have revealed the inaccuracy of the Debtor's representations. *In re Jones.* 31 F. 3d 659, 662 (8th Cir. 1999). *Pontow* at page 610. It could not be clearer that the blanks in the J/I column of the PFS are red flags which O'Neil had a duty to investigate further. Had he done so he would have had exact knowledge about the ownership of the three items of personal real estate on the PFS. Given the clear red flags it was unreasonable of O'Neil not to make further inquiries.  O'Neil testified he did literally no due diligence. He did not even ask for a bank statement showing that Morrell had $800,000 in his bank accounts as referenced on the PFS. O'Neil Cross.

11.     In the 8th Circuit case of *In re Keim,* 236 B.R. 400 (B.A.P. 8th Cir. 1999) the Bankruptcy Appellate Panel ("BAP") upheld the bankruptcy court's determination that the creditor's reliance was not reasonable because the financial statement presented, a hand scribbled, ambiguous, clearly incomplete statement <u>reflecting a partial interest in real estate,</u> raised significant **red flags** "that would have alerted an ordinarily prudent lender' to conduct at least a minimal investigation into the veracity of the representations. *Keim* at page 403. While Morrell asserts that there are no inaccuracies in the PFS, to the extent that the Court would rule otherwise, the facts of Keim appear to be directly on point and establish that O'Neil's alleged reliance on the PFS was not reasonable and that

he was required toi make a "minimal investigation" which, by his own admission, he did not make.

**PUBLISHED WITH INTENT TO DECEIVE**

12. The Debtor must have knowledge of the falsity of the information or reckless disregard for the truth to satisfy the intent to deceive requirement. *Bohr* at page 169. Morrell's conduct falls very far from meeting this standard for intent to deceive. He testified that: a) he listed all of his assets on the PFS; b) on the PFS Date the Green Street entities which constituted the bulk of his wealth and from which he derived all of his income were riding high and financially stable; c) Green Street had won several awards as developer of the year at the PFS Date; d) had O'Neil not decided to invest in GS Vista Green Street could have obtained the investment from someone else;  e) Morrell had no knowledge that any representation on the PFS was false or inaccurate and does not believe that it was; f) the GS Vista project has not paid its investors yet because of interest rate increases, Covid related delays and expense increases; g) O'Neil knew that they were seeking investors in GS Vista so they could obtain a construction loan to build the apartment project in which GS Vista had an interest; h) Morrell and Hulse had no incentive to defraud O'Neil as they did not get paid on the project until after O'Neil; i) Morrell could have obtained the funds O'Neil invested for a much lower rate, but chose investment to have enough equity to obtain the construction loan to begin the project; and j) investors in Green Street projects relied primarily on the underlying real estate developments and not personal guaranties or personal financial statements. Morrell Direct.

13. O'Neil testified that he knew his interest in GS Vista was ahead of Morrell and Hulse and that he knew they would use his funds as equity to obtain a loan to build the

apartments and that his equity position would be behind the construction loan. O'Neil Cross. O'Neil could not come up with any possible reason why Morrell would deceive him. O'Neil Cross. His vague reference to Developer fees was speculative, and these are typically mere reimbursements of out-of-pocket development expenses incurred by the developer.

14.    There is no conceivable motive for a conclusion that Morrell acted with intent to deceive in providing O'Neil with substantially the same financial statement he provided to lenders and investors on as many as 50 separate occasions. Morrell Direct.

## CONCLUSION

15.    O'Neil failed to establish the crucial elements of material falsity, reasonable reliance and intent to deceive necessary to establish a case under 11 USC Section 523 (a) 2 B and therefore judgment should be entered in favor of Defendant in this adversary proceeding.

HERREN, DARE & STREETT

By: __/s/ David M. Dare_____
David M. Dare #35965
439 South Kirkwood Road Suite 204
St. Louis, Missouri 63122
(314) 965-3373
(314) 965-2225 Fax
ddare@hdsstl.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing document was filed electronically on the 14th day of April, 2026, with the United States Bankruptcy Court, and has been served on counsel for Plaintiff, Joe D. Jacobson and David Keesling via e-mail by the Court's CM/ECF System as listed on the Court's Electronic Mail Notice List.

HERREN, DARE & STREETT

By: __/s/ David M. Dare_____
David M. Dare #35965
439 South Kirkwood Road Suite 204
St. Louis, Missouri 63122
(314) 965-3373
(314) 965-2225 Fax
ddare@hdsstl.com